UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

FILED
2016 AUG 26  AM 11:58
U.S. DISTRICT COURT
NEW HAVEN, CT.

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL NO. 3:16cr158(JAM) |
| v. | 18 U.S.C. Section 1343 (Wire Fraud) |
| DEBRA BIAGI | |

INFORMATION

The United States Attorney charges:

The Defendant and the Victims

1. At all times relevant to this Information, the defendant DEBRA BIAGI lived and worked in Connecticut. BIAGI was employed by HB Nitkin Group ("the Company") as a key assistant to the Chairman of the Company and was responsible for managing, among other things, the accounts payable for the Company.

2. HB Nitkin Group is a privately owned business, engaged in real estate management and development projects with its principal place of business in Greenwich, Connecticut. The Company oversees and manages a portfolio of limited liability corporations ("LLCs") or limited partnerships ("LPs"), with each separate entity comprising a distinct real estate development project. Such LLCs and LPs include Cromwell Square Partners LP, Danbury-Newtown LLC, Glastonbury Somerset LLC, HBNI Orange LLC, Lockworks Square LP, Post Hill LP, Southport Post Road LP, and Westport Post Road LLC.

3. Key Company individuals and members of their families and related entities

1

retained financial and banking information at the Company.  Those individuals, family members, and entities include AWN Family LLC, SLN Family LLC, and individuals with initials H.N. and B.W.

4. The HB Nitkin Group and related entities and other individuals noted above in paragraphs 2 and 3 are hereinafter collectively referred to as the "Victims."

### Scheme to Defraud the Victims

5. During all relevant times, BIAGI used her position at the Company to engage in a scheme to defraud the Victims by various material misrepresentations and omissions, as described in the paragraphs that follow.  In her role of overseeing the accounts payable and the issuance of checks for the Company and Victims, and as an otherwise trusted key employee for the Company and related entities, BIAGI had access to the financial and checking information, including checkbooks, of the HB Nitkin Group and the other Victims.  She also owed a fiduciary duty to her employer and yet omitted disclosing to her employer the material facts of her ongoing illegal conduct and acts of deception.  During the course of her scheme, BIAGI defrauded the Victims out of more than $711,000.

6. During the relevant time and to further her scheme, BIAGI would create fraudulent invoices made out to fictitious companies, including sufficient false information on the invoices to suggest that the invoices were legitimate, detailing charges for items like masonry, carpentry, electrical and plumbing work. BIAGI would misappropriate the checkbooks of the Victims and then make checks out to fictitious companies as the payees, purportedly to pay the fraudulent invoices.  To keep track of which invoices were fictitious and which checks were made to fictitious companies, BIAGI would often include her initials "DB" in the fabricated company name

listed on the invoice and check. BIAGI would then further note the fictitious company as the payee in the relevant accounting records of the Victims and would file the fabricated invoices as business records to paper the file.

7. BIAGI would also, as needed, misappropriate the signature stamp of the Company's Chairman which BIAGI used to "sign" the misappropriated checks and to falsely suggest that the paid expenditure was both legitimate and authorized. BIAGI would deposit the relevant checks into her own personal bank account, at times endorsing the check with an illegible signature to further hide her misconduct. She would subsequently withdraw the monies for her personal use.

8. In addition to the above-described conduct, BIAGI would also simply misappropriate checks from the Victims, including taking legitimate checks made out to the Victims and intended for deposit into certain accounts held by the Victims. Rather than depositing the items as directed, BIAGI would simply write the checks to "Cash" and then deposit the monies into her own account.

## COUNT ONE
(Wire Fraud)

9. Paragraphs 1-8 are incorporated by reference as if stated in full herein.

10. From in or about February 2014 through on or about December 31, 2015, in the District of Connecticut and elsewhere, the defendant DEBRA BIAGI knowingly, willfully and with intent to defraud, devised and intended to devise a scheme and artifice to defraud the Victims by means of materially false and fraudulent pretenses, representations and promises, which scheme and artifice is in substance set forth in Paragraphs 5-8 above.

11.     As a result of the scheme, BIAGI exposed the Victims to a risk of loss and, in fact, the Victims suffered significant losses.

<u>The Execution of the Scheme and Artifice to Defraud</u>

12.     On or about July 15, 2014, in the District of Connecticut and elsewhere, having devised and intended to devise a scheme and artifice to defraud the Victims by obtaining money and property by means of materially false and fraudulent pretenses, representations and promises as set forth in Paragraphs 5-8 above, and for the purpose of executing such aforementioned scheme and artifice, BIAGI caused the transmission of certain items by means of wire communications in interstate commerce, namely, by the processing of check No. 4990 from the Southport Post Road LP (paid on a fraudulent invoice made out to fictitious payee company of "D & B") for $3,035.36, which BIAGI deposited at the Chase Bank in Greenwich, Connecticut, and such check was duly negotiated by wire from the State of Connecticut through the Federal Reserve system outside of the State of Connecticut to permit funds to be transferred from a Victim's account to BIAGI's personal bank account.

All in violation of Title 18, United States Code, Section 1343.

UNITED STATES OF AMERICA

_____
DEIRDRE DALY
UNITED STATES ATTORNEY

_____
CHRISTOPHER W. SCHMEISSER
ASSISTANT UNITED STATES ATTORNEY